2008-NMCA-109

190 P.3d 1150

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Phillip LITTLEFIELD, Defendant–Appellant.**

No. 27,504.

Court of Appeals of New Mexico.

July 3, 2008.

Certiorari Granted, No. 31,245, Aug. 13, 2008.

Gary K. King, Attorney General, Santa Fe, NM, Ralph E. Trujillo, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Jason C. Gordon, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} Defendant, who was incarcerated pending trial, was granted a furlough to seek medical treatment. He absconded, a warrant was issued for his arrest, the trial date was vacated, and he was arrested on the warrant four days prior to the vacated trial setting and forty days prior to the expiration of an extension of the six-month rule that had been granted by the Supreme Court. After the extension expired, Defendant filed a motion to dismiss, which the district court denied. Defendant reserved this issue pursuant to a conditional plea. We affirm the district court's interpretation of Rule 5–604(B)(5) NMRA as it applies to the facts of this case, holding that the six-month limitation began anew when Defendant failed to appear at the jail as required by his furlough order and when he was arrested on the warrant for that failure to appear.

## FACTS AND PROCEDURAL BACKGROUND

{2} On March 20, 2006, the New Mexico Supreme Court granted an extension of the six-month rule until September 27, 2006, and Defendant's trial was set for August 22, 2006. While incarcerated, Defendant was attacked and beaten, suffering serious injuries, including a broken jaw. He was granted a number of unescorted furloughs from jail to attend to his medical needs. The first furlough was granted on May 12 for May 15, and the last furlough was granted on June 14 for a medical appointment on June 22. On June 21, the district court noticed the trial for August 22. Defendant failed to return from the June 22 appointment, and a bench warrant was ordered by the district court on August 3, 2006, for "fail[ing] to return to [jail] as directed" in the furlough order. Defendant was arrested on the warrant on August 18, 2006. Neither the prosecutor nor defense counsel was aware that Defendant had been arrested at that time. Defendant was arraigned on the warrant on August 28, and without any discussion as to trial deadlines, a trial date was set for January 2007 at that hearing.

{3} After the Supreme Court's extension ran out on September 27, Defendant filed a motion to dismiss the case for failing to comply with Rule 5–604. Defendant maintains that because he was arrested four days prior to his trial date, there was no need to vacate the trial, and because he did not fail to appear at any hearing or proceeding, restarting the rule was unjustified. Defense counsel represented at the hearing on the motion to dismiss that his office had contacted the district court on August 7 and learned that because "the bench warrant was outstanding," the trial date was "taken off the docket." The district court did not agree with Defendant's position as to the interpre-

tation of the rule in this situation. In a letter opinion, it ruled that *State v. Lucas*, 110 N.M. 272, 274, 794 P.2d 1201, 1203 (Ct.App. 1990), encourages a common-sense, as opposed to a technical, reading of the rule, and therefore Defendant's acting in such a way as to require the issuance of a bench warrant for his arrest, which caused the vacation of the trial date, was sufficient to begin the six-month rule anew pursuant to Rule 5–604(B)(5).

## DISCUSSION

 {4} Rule 5–604(B)(5) states:

The trial of a criminal case or habitual criminal proceeding shall be commenced six (6) months after whichever of the following events occurs latest:

. . . .

(5) if the defendant is arrested or surrenders in this state for failure to appear, the date of arrest or surrender of the defendant[.]

We review the application of a rule by a district court de novo. *State v. Donahoo*, 2006–NMCA–147, ¶ 2, 140 N.M. 788, 149 P.3d 104.

{5} The issue in this case is whether the "failure to appear" language in Rule 5–604(B)(5) is intended to mean only a failure to appear contrary to NMSA 1978, § 31–3–9 (1999), or whether the rule is intended to encompass other failures to appear as well. Defendant argues that there is no provision in the rule for failure to return from a furlough and that failure to appear under Rule 5–604(B)(5) occurs only when a defendant fails to appear before a judicial officer at a scheduled hearing. Section 31–3–9 is entitled "Failure to appear; penalty" and provides that a person "who willfully fails to appear before any court or judicial officer as required" is guilty of a criminal offense.

{6} The State contends that there is a statute, in addition to Section 31–3–9, which contains language concerning failure to appear, and that the Supreme Court's intent in Rule 5–604(B)(5) was to reference that statute also. That statute is NMSA 1978, § 31–3–2 (1993), and it is entitled "Failure to appear; forfeiture of bail bonds." It provides in part:

A. Whenever a person fails to appear at the time and place fixed by the terms of recognizance, the court may issue a warrant for his arrest.

B. Whenever a person fails to appear at the time and place fixed by the terms of his bail bond, the court:

(1) may issue a warrant for his arrest; and

(2) may declare a forfeiture of the bail.

The district court's order for the warrant was for failing to return to the jail as ordered in the furlough order, and its warrant was for failing to comply with conditions of release.

{7} We need not decide in this case whether the State is correct that any time a warrant is issued for a failure to appear at a fixed time and place pursuant Section 31–3–2(A), that circumstance automatically invokes the provisions of Rule 5–604(B)(5), and therefore we need not address the dissent's explanation of the distinctions between failure to appear for court proceedings and failure to abide by conditions of release. In fact, in *State v. Hicks*, 2002–NMCA–038, ¶¶ 10, 13, 19, 132 N.M. 68, 43 P.3d 1078, we injected some uncertainty into the law governing failure to appear in that we noted, in that criminal prosecution for failure to appear contrary to Section 31–3–9, that the defendant conceded that his failure to post bond might have violated Section 31–3–2(A). *Hicks*, 2002–NMCA–038, ¶ 10, 132 N.M. 68, 43 P.3d 1078. Yet, we also pointed out that "recognizance" has a particular meaning under the Criminal Procedure Act, NMSA 1978, §§ 31–1–1 to –3–9 (1972, as amended through 1999), which includes forfeiture of bail. *Hicks*, 2002–NMCA–038, ¶ 13, 132 N.M. 68, 43 P.3d 1078. As an aside, we note that "recognizance" also has a colloquial meaning and is sometimes used to refer to the situation in which a defendant is released from jail on furlough, as in this case. *See State v. Hill*, 117 N.M. 807, 807–08, 877 P.2d 1110, 1110–11 (Ct.App.1994). Finally, we concluded in *Hicks* that a defendant might be guilty of a criminal failure to appear under Section 31–3–9 if the order for the defendant's appearance was sufficiently specific as to time, place, and requirement that the appearance

be in person. *Hicks,* 2002–NMCA–038, ¶ 19, 132 N.M. 68, 43 P.3d 1078.

{8} Despite this commentary, the actual holding of the *Hicks* case was that an order for the defendant to post bond by a certain date did not require an appearance such that the failure to post bond could be punished under Section 31–3–9 as failure to appear. *Hicks,* 2002–NMCA–038, ¶ 20, 132 N.M. 68, 43 P.3d 1078. The underlying bases of the *Hicks* case were the familiar principles that penal statutes must be strictly construed, that the rule of lenity would be applied in cases of ambiguity, and that "courts will not extend punishment to cases not plainly within the [statutory] language used." *Id.* ¶¶ 11, 19, 20 (internal quotation marks and citations omitted).

{9} Based on the *Hicks* case, we acknowledge that it is uncertain that either Section 31–3–2 or 31–3–9 applies to extend the six-month rule in Defendant's case, although arguments could be made that they do. However, the principles animating the *Hicks* decision and governing penal statutes simply do not apply to the interpretation of the six-month rule. The purpose of Rule 5–604 is "to assure the prompt trial and disposition of criminal cases, not to effect dismissals by such a technical application." *State v. Flores,* 99 N.M. 44, 46, 653 P.2d 875, 877 (1982) (decided under the former rule, which provided that the trial was to commence within six months of "the date of arrest of the defendant after conditions of release have been revoked for failure to appear as required" (internal quotation marks and citation omitted)).

{10} The "technical application" that was being discussed in *Flores* was the situation where a defendant was not arrested after conditions of release had been revoked because he had no conditions of release; he was incarcerated and was erroneously released from that incarceration. *Id.* at 45, 653 P.2d at 876. Therefore, the words of the rule did not technically apply to him, but the Supreme Court nonetheless held that the six-month rule would be restarted as of the date the defendant was arrested on the bench warrant that was issued for his failure to appear at a pretrial conference. *Id.* at 45, 46, 653 P.2d at 876, 877.

{11} This Court faced a similar situation, in which the precise language of the rule did not cover the facts, in *State v. Jaramillo,* 2004–NMCA–041, 135 N.M. 322, 88 P.3d 264. That case involved two co-defendants, whose first trials ended in mistrials and whose cases were not effectively severed when one of them took an interlocutory appeal on grounds equally applicable to the other. *Id.* ¶¶ 2–3. The defendant argued that because the cases were not severed and because the defendant did not appeal, the six-month rule ran from the declaration of the mistrial under Rule 5–604(B)(3) while the state argued that six-month rule ran from the mandate on the co-defendant's appeal under Rule 5–604(B)(4). *Jaramillo,* 2004–NMCA–041, ¶¶ 6–7, 135 N.M. 322, 88 P.3d 264. We agreed with the state, basing our rationale on the idea that the six-month rule was to be construed in a common-sense and untechnical manner. *Id.* ¶ 8. We characterized our holding as follows: when the facts of the case can be interpreted such that the six-month rule is not violated and when the trial court so interprets them, "a dismissal in such circumstances would effectuate the sort of technical dismissal upon which the law frowns." *Id.* ¶ 1.

{12} A similar analysis is required in this case. As we have said, the purpose of the six-month rule is to promptly dispose of criminal cases. Apart from the initial arraignment, the purpose of the events triggering the running of the six-month rule in Rule 5–604(B) is to restart the rule when certain common events occur that make it reasonable to give the state another six months in which to try a defendant. The event applicable to this case is an arrest for failure to appear under Rule 5–604(B)(5). Because Defendant did fail to appear in the jail as fixed by the court's furlough order, itself a criminal act under *Hill,* 117 N.M. at 807–09, 877 P.2d at 1110–12; because the district court issued a bench warrant because of that failure to appear; and because the district court vacated the trial date as a result of the bench warrant, we believe it is most consistent with the wording of the rule as applied

to the facts of this case to hold that Rule 5–604(B)(5) operated to begin the running of the six-month rule anew when Defendant was arrested on the warrant for his failure to appear at the jail in accordance with the terms of his furlough.

{13} Finally, we note that in *Flores, Jaramillo,* and each of the other cases in which our courts have eschewed a technical interpretation of the rule, the state could have gotten an extension of the six-month limitation, but it did not even seek one, as was true in this case also. *See generally State v. Mendoza,* 108 N.M. 446, 774 P.2d 440 (1989), *modified on other grounds as recognized by State v. Lobato,* 2006–NMCA–051, ¶ 28, 139 N.M. 431, 134 P.3d 122. We can only conclude that the fact that the State did not seek an extension when it could have done so plays little part in the analysis of whether one of the events in Rule 5–604(B)(2) through (8) applies under a common-sense and non-technical reading. Therefore, there was no violation of the six-month rule at the time of Defendant's motion to dismiss, which was filed two months after his arrest.

**CONCLUSION**

{14} The district court's denial of Defendant's motion to dismiss and Defendant's convictions are affirmed.

{15} **IT IS SO ORDERED.**

I CONCUR: JONATHAN B. SUTIN, Chief Judge and RODERICK T. KENNEDY, Judge (dissenting).

KENNEDY, Judge (dissenting).

{16} Both Defendant and the State agree that for purposes of this appeal, Defendant never missed a hearing in court. Because Defendant never failed to appear for any proceeding related to furthering the disposition of his criminal case, I cannot concur in the majority's conclusion that resetting the six-month period under Rule 5–604(B)(5) was triggered by his "failure to appear."

{17} Failing to abide by conditions of release is unrelated to appearing in a place or before an official where any matter in a pending case might be resolved. I use such language recalling that the criminal statute, Section 31–3–9 (Failure to Appear) was ex-panded after we held that failing to appear for a probation violation hearing was not a failure to appear for a "criminal proceeding" under the former statute. *State v. Foster,* 1998–NMCA–147, ¶ 1, 125 N.M. 830, 965 P.2d 949. As a trial judge, I have seen persons who did not appear pretrial at places other than court, as "fixed by [my] terms of recognizance" under Section 31–3–2(A), nevertheless appear in court as required by a notice or summons for a scheduled hearing before the court. I might conceive of a situation short of triggering liability under a strict application of the elements of the Failure to Appear criminal statute that might reset the six-month period under Rule 5–604. Here, though, Defendant's actions do not support splitting hairs, and the Failure to Appear statute and its jurisprudence is instructive. I respectfully dissent, declining to partake in the majority's misconception in this case.

{18} By July 31, 2006, the State found out that Defendant had not returned to jail and requested a bench warrant, which was ordered by the district court on August 3 for "fail[ing] to return to [jail] as directed" in the furlough order. At the hearing on the motion to dismiss, defense counsel represented to the court that his office had contacted the district court on August 7 and learned that the trial date was "taken off the docket" because "the bench warrant was outstanding." On August 28, at the arraignment on the warrant and without any discussion as to trial deadlines or new extensions, a trial date was set for January 2007.

{19} Defendant maintains that because he was arrested four days before his August 22 trial date, there was no need to vacate the trial. I regard this argument as irrelevant. By August 22, there was no trial setting to miss. The trial date had been vacated at least ten days before Defendant was arrested. Vacating a trial date is within the district court's discretion, and nothing here indicates that the court's discretion was abused or that Defendant was prejudiced thereby. *State v. Salazar,* 2007–NMSC–004, ¶ 10, 141 N.M. 148, 152 P.3d 135. The district court might have waited to see if Defendant actually appeared for trial before vacating the trial date, thus confirming a factual failure to

appear by any standard. Had Defendant appeared for trial, considerations concerning the readiness of either side to proceed would likely have called a further rule extension to mind once the warrant was addressed. Regardless, what could have been is not fact for consideration here.

{20} The case of a defendant who, without failing to appear at any hearing or proceeding, absconds but is returned prior to his trial date has not yet arisen in our jurisprudence. Rule 5–604(B)(5) states:

> The trial of a criminal case or habitual criminal proceeding shall be commenced six (6) months after whichever of the following events occurs latest:
>
> . . . .
>
> (5) if the defendant is arrested or surrenders in this state for failure to appear, the date of arrest or surrender of the defendant[.]

{21} When construing rules of procedure, we apply the same rules that are applicable to statutory construction. *Walker v. Walton,* 2003–NMSC–014, ¶ 8, 133 N.M. 766, 70 P.3d 756. We therefore look first to the plain meaning of the rule and refrain from further interpretation when the language is clear and unambiguous. *State v. Gutierrez,* 2006–NMCA–090, ¶ 7, 140 N.M. 157, 140 P.3d 1106. "When the language of the rule is not defined in the rule, it is given its ordinary meaning." *State v. Granado,* 2007–NMCA–058, ¶ 22, 141 N.M. 575, 158 P.3d 1018; *State v. Eden,* 108 N.M. 737, 741, 779 P.2d 114, 118 (Ct.App.1989).

{22} At the hearing on the motion to dismiss in December 2006, the State argued nothing more than that Defendant's "arraignment on a bench warrant ... triggered [Rule] 5–604." This might explain vacating the trial date but not the State's inaction during the time remaining on the rule. A mere "arrest" on a bench warrant is not the only requirement under Rule 5–604(B)(5), which triggers resetting the six-month period; the warrant must clearly be issued for "failure to appear." That is the plain language of the rule. Additionally, Defendant escaped from custody; he did not fail to appear. *Hill,* 117 N.M. at 808, 877 P.2d at 1111; *see* NMSA 1978, § 30–22–8 (1963).

{23} The district court's warrant was for failure to abide by conditions of release. Defendant was arrested on that warrant; he was not arrested for failure to appear. Defendant argues that there is no provision in the rule for failure to return from a furlough and that failure to appear under Rule 5–604(B)(5) occurs only when a defendant fails to appear before a judicial officer at a scheduled hearing..

{24} The criminal Failure to Appear statute has just such a provision, and Defendant contends that the statute "connects" to the rule. Section 31–3–9 makes it a crime to "willfully fail[ ] to appear before any court or judicial officer" when that person is "released pending any proceeding related to the prosecution or appeal of a criminal offense." *Id.; see Hicks,* 2002–NMCA–038, ¶ 15, 132 N.M. 68, 43 P.3d 1078 (holding that criminal failing to appear requires not coming to court as directed by a notice, subpoena, summons, or other legal process). Indeed, no conviction has been sustained under the statute without the defendant willfully failing to appear before a court as specifically ordered. *See id.* (citing *State v. Solano,* 1999–NMCA–019, ¶ 2, 126 N.M. 662, 974 P.2d 156 (charging the defendant with failure to appear at trial)); *State v. Peppers,* 110 N.M. 393, 394, 796 P.2d 614, 615 (Ct.App.1990) (affirming conviction where the defendant failed to appear at a sentencing hearing); *State v. Aranda,* 94 N.M. 784, 785, 617 P.2d 173, 174 (Ct.App. 1980) (affirming conviction where the defendant failed to appear for trial). When a defendant orally promised to appear to enter a plea the following day and was released on his own recognizance without issue of court process, his conviction for failure to appear was reversed. *State v. Easterling,* 89 N.M. 486, 487–88, 553 P.2d 1293, 1294–95 (Ct.App. 1976). Here, we are concerned with Defendant's failure to return from a furlough.

{25} Despite the cause-and-effect relationship between Defendant's absconding and the district court's issuing a bench warrant and vacating the trial date, causing a delay of the trial date is also not something that automatically triggers a new six-month period. Further, we have previously stated that

"the purpose of the rule [is] to assure prompt disposition of criminal cases, not to effect dismissals by technical applications of the rule." *Solano,* 1999–NMCA–019, ¶ 12, 126 N.M. 662, 974 P.2d 156 (internal quotation marks and citation omitted).

{26} A reset of the six-month period under Rule 5–604(B)(5) requires some action by a defendant that is at least the equivalent of failing to appear in court. Earlier I suggested a workable view shy of the criminal act of failing to appear as directed, at a place or before an official where the resolution of any matter in a pending case might occur. The majority instead joins the State to assert by reference to Section 31–3–2 that being the subject of a warrant for failing to abide by conditions of release requiring one to appear at a time and place is also a failure to appear under Rule 5–604(B)(5). This view is too broad. Section 31–3–2 clearly differentiates between a defendant's appearing at times and places fixed by "terms of recognizance," Section 31–3–2(A), and failing to appear at times and places "fixed by the terms of his bail bond," Section 31–3–2(B). I read Rules 5–401, –402, and –403 NMRA as distinguishing violations of bond for appearance in court, provoking a warrant and possible forfeiture of bond, from violations of the conditions of release, provoking a warrant and a hearing before the court to realign release conditions imposed under Rule 5–401(D). Such realignment to "assure orderly administration of justice" may revoke conditions of recognizance and hold a defendant for trial. *Id.* Indeed, such realignment happened previously in this case when Defendant was arrested on an earlier warrant for violating conditions of his release, resulting in his pretrial confinement with which we are now concerned. The hearing that followed this prior warrant arrest is analogous to the warrant arraignment that occurred on August 28, 2006. Once apprehended on the prior warrant, Defendant was ordered held for trial. Extensions of the six-month period that were required after this prior warrant arrest were obtained.

{27} Violating conditions of release does not necessarily impact commencement of a trial or judicial proceedings—the subject of Rule 5–604. Our Supreme Court's opinion in *State v. Romero,* 2007–NMSC–030, ¶ 5, 141 N.M. 733, 160 P.3d 914, differentiated between failing to appear for a proceeding in court, for which bond could be forfeited, and violating conditions of release, for which it could not. Bond guarantees appearance in court and conditions of release do not. Hence, violating conditions of release does not constitute a failure to appear sufficient to order the forfeiture of a bond. *See id.*

{28} Failing to appear itself does not trigger resetting the six-month period under Rule 5–604(B)(5), nor is issuing a bench warrant for failure to appear a triggering event under a rule identical to Rule 5–604(B)(5). *Granado,* 2007–NMCA–058, ¶¶ 21, 27, 141 N.M. 575, 158 P.3d 1018. What is required by the plain language of the rule is that the defendant be *"arrested or surrender* [ ] ... for failure to appear[.]" Rule 5–604(B)(5) (emphasis added). In this case, Defendant never failed to appear in court. There was no bench warrant issued for failure to appear, and Defendant was not arrested for failure to appear.

{29} We stated clearly in *State v. Guzman,* 2004–NMCA–097, ¶ 11, 136 N.M. 253, 96 P.3d 1173, that when time remains on the rule and the state does not take appropriate action within those limits to ensure that a trial occurs, then the defendant has no more obligation than to file a motion to dismiss. In *Guzman,* the defendant did not request a dismissal until after the district court granted a rule extension *nunc pro tunc* and forfeited her entitlement to a dismissal under Rule 5–604. *Guzman,* 2004–NMCA–097, ¶¶ 11–13, 136 N.M. 253, 96 P.3d 1173. We see little in the record that indicates consequences of Defendant's actions other than the assumption that a warrant would automatically vacate the trial date. More to the point, even assuming that the State was not aware of Defendant's arrest before his arraignment on the warrant, the State was certainly aware of his arrest by the time of the arraignment on August 28. If we are to give full credence to the purpose of the rule being to further prompt trials of criminal cases, *see Mendoza,* 108 N.M. at 448, 774 P.2d at 442, we are correct to ask why, after

learning before August 28 of Defendant's return, the State did nothing by September 27 to either secure a trial date or another extension.

{30} The majority opinion calls attention to *Flores* and *Jaramillo* in particular as two of the multiple cases it has cited "in which our courts have eschewed a technical interpretation of the rule," noting that in each case the state had foregone seeking an extension of the six-month limitation, "as was true in this case also." While espousing a concept for failure to appear that is broader than the criminal statute, I disagree with the majority; neither *Jaramillo* nor *Flores* lacked a triggering event, as does this case, for rule-specific reset of the six-month period. It is also significant that a special concurrence in *Jaramillo* points out the necessity of limiting *Jaramillo*, advocating that "whether a Rule 5-604 violation has occurred should be decided on a case-by-case basis" and that the *Jaramillo* case "can be decided using settled applicable doctrines without trying to anticipate how to decide other Rule 5-604 cases that [have] come before us." *Jaramillo*, 2004-NMCA-041, ¶ 21 (Vigil, J., specially concurring). The majority discusses *Jaramillo*, which dealt with severance of trials, an appeal by one co-defendant, and its effect on the other co-defendant who waited out the rule but ran afoul of it; and the case involved a reset of the six-month period under Rule 5-604(B)(3). *Jaramillo*, 2004-NMCA-041, ¶¶ 23-26 (Vigil, J., specially concurring). This Court held that under Rule 5-604(B)(4) the "operative date to commence trial was six months after the mandate was filed in [the district court on] co-defendant's appeal." *Jaramillo*, 2004 NMCA-041, ¶ 30 (Vigil, J., specially concurring). The application of

*Jaramillo* beyond its facts in this case is inapposite. The majority also discusses *Flores*, in which the Supreme Court upheld the trial court's order to reset the six-month period as of the date of defendant's arrest for "failure to appear at the pretrial conference [as prescribed under Rule 5-604(B)(5) ]." *Flores*, 99 N.M. at 46, 653 P.2d at 877. *Flores* did not require the manufacturing of a failure to appear before the court. Unlike *Jaramillo* and *Flores*, in which a specific event prescribed under the rule triggers a resetting of the six-month period, this case lacks the triggering event under Rule 5-604.

{31} Defendant was arrested on the district court's warrant for failing to abide by conditions of release. *See* § 31-3-2. In this case, as in *Granado*, no warrant existed to arrest the defendant for failure to appear, nor did there exist any legal authority to take him into custody for failure to appear. When he appeared, it was for arraignment on the warrant concerning conditions of release. Therefore, he did not surrender for failure to appear, nor was he arrested for it. *Granado*, 2007-NMCA-058, ¶ 26, 141 N.M. 575, 158 P.3d 1018. No triggering event occurred in this case to reset the six-month period, and it expired without extension on September 27, 2006. Therefore, bearing no affection for Defendant's derailing this process to his benefit, I view the facts as failing to support the triggering event necessary to re-start the period for trial and respectfully dissent.