2004 NMCA 041
STATE OF NEW MEXICO, Plaintiff-Appellee,
v.
JACK JARAMILLO, Defendant-Appellant.
Docket No. 23,191.
Court of Appeals of New Mexico.
Filing Date: February 13, 2004.
Certiorari Denied, No. 28,536, April 1, 2004.
Corrected May 9, 2004.
Patricia A. Madrid, Attorney General, Santa Fe, NM, for Appellee.
Arthur W. Pepin, Elizabeth Blaisdell, Assistant Attorneys General, Albuquerque, NM, for Appellee.
John B. Bigelow, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

OPINION
PICKARD, Judge.
{1} Rule 5-604 NMRA 2003, the six-month rule for criminal cases, "is a bright-line rule, designed to assure prompt disposition of criminal cases." State v. Cardenas, 2003-NMCA-051, ¶ 12, 133 N.M. 516, 64 P.3d 543 (internal quotation marks and citation omitted). At the same time, however, our Supreme Court has cautioned that the rule is to be read with common sense and not to effectuate technical dismissals. State v. Mendoza, 108 N.M. 446, 449, 774 P.2d 440, 443 (1989); State v. Flores, 99 N.M. 44, 46, 653 P.2d 875, 877 (1982). Like so many of the six-month rule cases, this one lies at the intersection between these two lines of casesthe bright line that requires dismissal and the untechnical reading that blurs the bright line. The facts of this case can be reasonably interpreted so that the six-month rule is not violated; a dismissal in such circumstances would effectuate the sort of technical dismissal upon which the law frowns. We therefore affirm the trial court's denial of Defendant's motion to dismiss.

FACTS AND PROCEEDINGS
{2} This case involves Rules 5-604(B)(3) and (4), the provisions dealing with mistrials and appeals. Defendant and a co-defendant were separately indicted for murder, but their cases were joined. The co-defendant had made a statement, implicating both himself and Defendant. Defendant moved to sever the cases, but the prosecutor agreed that he would not use the co-defendant's statement at the joint trial. No written order reflects any action on Defendant's motion for severance. The cases went to joint trial in December of 1999. The prosecutor did not remember his agreement and sought to introduce against the co-defendant only the co-defendant's statement about what the co-defendant did. Defendant moved for a mistrial, which was granted on the second day of trial, December 7, 1999. The trial court also ordered a severance at that time. No written orders were ever entered reflecting either the mistrial or the severance rulings.
{3} At the time this trial began, the operative date for commencing trial under the six-month rule was February 5, 2000. On December 16, 1999, the co-defendant moved to dismiss on double jeopardy grounds, based on alleged prosecutor misconduct precipitating the mistrial. The motion was heard and denied in December, and the co-defendant filed an appeal in January 2000. Defendant filed his own motion to dismiss on the same grounds in February 2000. At the hearing on February 7, 2000, at which the trial court denied the motion, Defendant indicated that he would appeal also, and the court indicated that both defendants "might as well" be on appeal.
{4} Defendant never filed an appeal, but during the ensuing months, prior to the time the co-defendant's appeal was decided against him, there were several hearings in Defendant's case on matters concerning bond and conditions of release. These hearings were held in July 2000, October 2000, February 2001, and April 2001. A joint notice of status conference, covering both Defendant's and the co-defendant's cases, was filed in August 2000. In February 2001, the co-defendant's appeal was decided, and mandate was issued in May 2001.
{5} On June 18, 2001, Defendant's case was noticed for trial on September 24, 2001. A few days before the scheduled trial, Defendant filed his motion to dismiss for the alleged six-month rule violation. The trial court denied it, ruling that Defendant was responsible for preparing the written severance order. The court reasoned that because the cases were not effectively severed, the co-defendant's appeal governed the six-month rule such that Rule 5-604(B)(4) provided that the six-month rule would not expire until six months from the mandate or in November of 2001. Defendant thereafter pleaded guilty, reserving his right to appeal the six-month rule issue.

DISCUSSION
{6} Defendant argues that because the cases were severed and because he did not appeal, his trial was required to commence by June 7, 2000, six months after the declaration of the mistrial. See Rule 5-604(B)(3) (requiring trial to be commenced six months after the order declaring a mistrial is filed); Rule 5-121(E) NMRA 2003 (placing the ultimate responsibility for entry of orders on the trial court); State v. Ratchford, 115 N.M. 567, 570, 855 P.2d 556, 559 (1993) (holding that oral order granting a new trial takes precedence over rule stating that motions not acted on within a certain time are deemed denied); cf. State v. Reyes-Arreola, 1999-NMCA-086, ¶¶ 3, 20, 127 N.M. 528, 984 P.2d 775 (indicating that nunc pro tunc order declaring a mistrial, which was filed four months after the mistrial was actually declared, benefitted the defendant and conformed to the purpose of the rule, which was to permit six months to try a defendant after a mistrial is declared).
{7} The State argues that the parties' actions in this case were the actions of people who believed that the co-defendant's appeal would apply to Defendant's double jeopardy issue and thus the co-defendant's actions in delaying the trial should apply equally to Defendant such that the six-month clock would not start until mandate on the appeal was issued under Rule 5-604(B)(4). The State particularly relies on the rule that the bar of double jeopardy may be raised at any time, NMSA 1978, § 30-1-10 (1963), meaning that the double jeopardy claim would be available to Defendant notwithstanding his failure to appeal if the co-defendant had won his appeal. The State also relies heavily on the facts that Defendant acted throughout the pendency of the co-defendant's appeal as though Defendant were waiting for its outcome; i.e., he did not ask for a trial setting, a speedy trial, or a dismissal on six-month rule grounds, and he acquiesced in the court's authority over him for bond and condition-of-release purposes.
{8} We believe that the State has the more persuasive position. We base our rationale on the purposes of the six-month rule and the requirement that it be construed in a common-sense and untechnical manner. As this case involves the application of the six-month rule, our review is de novo. Cardenas, 2003-NMCA-051, ¶ 4.
{9} The purpose of the six-month rule is "to assure the prompt trial and disposition of criminal cases." Flores, 99 N.M. at 46, 653 P.2d at 877. The rule accomplishes its purpose by requiring trial to commence within six months of various events, failing which dismissal of the charges is required unless an extension of time has been properly obtained. Rule 5-604(F). Because of the possibility of obtaining such extensions of time, many cases could theoretically be decided in defendants' favor on the ground that available extensions were not obtained. A review of pertinent cases, however, shows that this is not how the rule is applied.
{10} For example, in the Flores case, this Court reversed a trial court's failure to dismiss when the defendant was detained without conditions of release after his arrest and then released by the penitentiary in violation of the court's order. When the defendant was not brought to trial within six months of arrest because he was at large, he moved to dismiss. Id. at 45, 653 P.2d at 876. An option for the State in that case would have been to request an extension of time. Instead, it relied on a provision of the rule that started the six months running anew when a defendant was arrested after conditions of release were revoked for failure to appear. The Supreme Court agreed with the State that the correct, untechnical reading of the rule was that the provision starting the six months anew applied, notwithstanding that there were no conditions of release or revocation thereof. Id. at 46, 653 P.2d at 877.
{11} Similarly, in Mendoza, 108 N.M. at 447-48, 774 P.2d at 441-42, this Court ruled in the defendant's favor on a six-month rule issue because the defendant was not brought to trial within six months of any event listed in the rule and because the State did not seek an extension. At issue in Mendoza was the event that began the six-month period anew upon a finding of competency after a defendant had been found incompetent. Id. at 448, 774 P.2d at 442. Mendoza had never been found incompetent, so this Court held that the provision did not apply. The Supreme Court reversed, holding that competency proceedings are clearly for the benefit of the accused and thus the provision in the rule should apply whenever there were competency proceedings, not solely when the technical declaration of incompetency was made. Id. at 448-49, 774 P.2d at 442-43.
{12} To a like effect is State v. Sanchez, 109 N.M. 313, 315-17, 785 P.2d 224, 226-28 (1989). In that case, as in the previous two, there was an arguable violation of the six-month rule and no effort by the State to obtain an extension of time. In that case, the six months expired on February 5, but the parties had negotiated a plea at that time and were in the process of formalizing it. Id. at 316, 785 P.2d at 227. They presented the plea to the court on March 15, when it was rejected. Id. In holding that the six-month period was extended until September 15 pursuant to the provision of the rule starting the six months anew when a plea is rejected, the Supreme Court relied on the parties' implicit consent to extend the deadline from February 5 to March 15 and on the benefit to the defendant from the plea negotiations. Id. at 316-17, 785 P.2d at 227-28.
{13} This Court, too, has refused to read the six-month rule or view the facts relating to issues arising under it in such a manner that would require a dismissal when common sense would indicate otherwise. Thus, in State v. Mayfield, 1996-NMCA-093, ¶¶ 3-4, 7-12, 122 N.M. 298, 923 P.2d 1183, we ruled that an interlocutory appeal taken after the six-month rule had run, but which was within the parties' and court's contemplation prior to the expiration of time, would activate the provision of the rule starting the six months anew upon issuance of mandate. And in State v. Valdez, 109 N.M. 759, 761-62, 790 P.2d 1040, 1042-43 (Ct. App. 1990), we ruled that a petition for an extraordinary writ filed in the Supreme Court would be treated as an appeal for purposes of the six-month rule.
{14} In contrast to these cases, this Court has held that the six-month rule applies to require a dismissal when six months have passed from an out-of-state arrest because the rule speaks of arrest without qualification, meaning that an in-state arrest is not required, State v. Solano, 1999-NMCA-019, ¶¶ 9-13, 126 N.M. 662, 974 P.2d 156, and has held that the six-month rule applies to require a dismissal when six months have passed from the issuance of mandate because there was no requirement in the applicable local criminal rules requiring prevailing parties on appeal to reinstate proceedings after an appeal by filing judgment on the mandate, Cardenas, 2003-NMCA-051, ¶ 12. In these cases, neither of which was reviewed by the Supreme Court, the bright line favored defendants, and there was little reason for construing the rule or the facts in any manner other than to hold that the six-month rule required a dismissal.
{15} We view our case as being more like the three Supreme Court cases than the last two Court of Appeals cases. In order to rule in Defendant's favor, we would be required to ignore the several facts lending support to the State's view that Defendant was intending to benefit from his co-defendant's appeal and did not perceive that his trial was being unduly delayed such that the charges should be dismissed. Otherwise, there would be no explanation for his failure to move to dismiss in July 2000, when his first bond issue was raised after six months expired from the date of the mistrial, or August 2000, when he was noticed for a status conference in the joint cases, or October 2000 through February 2001, when more bond issues were raised, or June 2001, when his trial was set.
{16} Nor are we persuaded by Defendant's argument that the oral severance order was binding on the issue of which event began the running of the six-month rule. As indicated immediately above, neither Defendant nor the State nor the trial court appeared to believe that the oral severance order operated to completely sever the proceedings in Defendant's case from the proceedings in the co-defendant's case. Moreover, the general rule is that an oral ruling can be changed at any time. Reyes-Arreola, 1999-NMCA-086, ¶ 10.
{17} Most important, we should review the trial court's view of its oral ruling on the severance issue with an eye toward the policies of the six-month rule. In this case, the State was not seeking to delay Defendant's trial for any reason other than one that would benefit Defendant. The parties were waiting to see whether the co-defendant's double jeopardy issue would make the trial of these cases unnecessary. Thus, the delay inured to Defendant's benefit, as well as the State's, and Defendant appeared to acquiesce in it. Under these facts, requiring a dismissal in this case would amount to the sort of technical application of the rule that our cases reject. See State v. Eskridge, 1997-NMCA-106, ¶¶ 8-12, 124 N.M. 227, 947 P.2d 502 (upholding trial court's denial of dismissal on six-month rule grounds when trial court made ambiguous and contradictory findings regarding whether the defendant waived his six-month rule rights).
{18} Insofar as the specially concurring opinion is concerned, we note several things. First, the trial court never stated that no severance was granted because no severance order was entered. It did state that Defendant did not prepare the order, but that statement was made in the context of a general denial of Defendant's six-month rule motion. Second, no one ever mentioned the local rule on which that opinion relies, either below or on appeal. Third, the local rule appears in a series of rules on pleading and practice, many of which apply exclusively to civil cases. We are hesitant to rely on grounds upon which neither the trial court nor the parties expressly relied, either below or on appeal.

CONCLUSION
{19} The denial of the motion to dismiss and the conviction are affirmed.
{20} IT IS SO ORDERED.
I CONCUR:
________________________________
CELIA FOY CASTILLO, Judge
MICHAEL E. VIGIL, Judge (specially concurring).
VIGIL, Judge (specially concurring).
{21} I concur in the result reached by the majority. However, I believe that whether a Rule 5-604 violation has occurred should be decided on a case-by-case basis. Because the majority goes far beyond deciding only this case, it paints with too broad a stroke and espouses doctrine that is not only unnecessary, but perhaps inapplicable to other cases. While I agree with the result reached by the majority, I do so for different reasons. This case can be decided using settled applicable doctrines without trying to anticipate how to decide other Rule 5-604 cases that may come before us.

FACTS
{22} The indictments charging Defendant and co-defendant each with an open count of murder were joined for trial together pursuant to Rule 5-203(B) NMRA 2003. Trial was set to commence on July 26, 1999. The deadline to commence trial under Rule 5-604 expired on August 5, 1999, but additional time was needed for Defendant to interview the State's witnesses. The State therefore obtained an unopposed extension of time until November 5, 1999, to commence trial from the district court under Rule 5-604(C). In November 1999, the Supreme Court granted a further extension of time until February 5, 2000, to commence trial pursuant to Rule 5-604(D).
{23} Alleging that the co-defendant made inculpatory statements about him, Defendant made a motion to sever pursuant to Bruton v. United States, 391 U.S. 123 (1968). The State represented it would not seek to introduce co-defendant's statement into evidence at a joint trial, and on that basis, the motion for severance was denied. The joint trial commenced on December 6, 1999. The State then attempted to introduce the inculpatory statement into evidence on the second day of trial, prompting Defendant to ask for a mistrial. The trial court granted the motion, stating, "I grant a mistrial. Call the jury in. And I'll grant the severance at this time."
{24} Co-defendant then filed a motion to dismiss, arguing that double jeopardy prohibited a second trial because of the prosecutor's attempt to introduce the inculpatory statement into evidence at the first trial. The trial court denied the motion, and co-defendant appealed to this court on January 20, 2000. While co-defendant's appeal was pending, Defendant filed a motion asserting a second trial was barred by double jeopardy that was in all material respects identical to co-defendant's. Defendant's motion to dismiss was denied at a hearing held on February 7, 2000. Defendant's counsel asked if the court would certify its decision for an interlocutory appeal, stating that co-defendant's appeal was pending. The trial court agreed to grant Defendant an interlocutory appeal. However, no written order was prepared or filed disposing of the motion, and Defendant never appealed. We then decided co-defendant's appeal, finding no double jeopardy prohibition to a second trial. The mandate on the co-defendant's appeal was filed on May 1, 2001, and on June 18, 2001, the trial court set the case for trial to commence on September 24, 2001.
{25} Four days before trial on September 20, 2001, Defendant filed a motion to dismiss, arguing that the deadline to commence trial expired on February 5, 2000, because no formal, written order reflecting the oral declaration of a mistrial was ever filed. The trial court denied the motion, stating, "I think [D]efendant should have filed a[n] order for severance." Defendant pled guilty to voluntary manslaughter, reserving his right to appeal the denial of his motion to dismiss under Rule 5-604.

ANALYSIS
{26} Defendant asked the trial court to order a mistrial; the trial court ordered a mistrial. Defendant asked the trial court to grant him a severance; the trial court granted him a severance. Finally, Defendant asked the trial court to allow him an interlocutory appeal from the order denying his motion to dismiss on double jeopardy grounds; the trial court agreed. However, no formal, written orders were prepared or filed disposing of these matters. This is important because the operative provisions of Rule 5-604 pertinent to this case state that a criminal case must be commenced within six months after "the date such order [declaring a mistrial] is filed" or "the date the mandate or order is filed in the district court disposing of the appeal" in the event of an appeal, whichever is later. Rule 5-604(B)(3), (4). Defendant asserts that since no written order was filed declaring a mistrial, and he did not appeal, the deadline to commence trial was February 5, 2000, and since trial did not commence on that date, Rule 5-604(F) requires that the indictment "shall be dismissed with prejudice." However, the Defendant's argument overlooks the fact that no written order was ever filed granting his motion for severance.
{27} It is well settled that an oral ruling is merely evidence of what a judge intends to do, it is not binding, and it can be changed at any time before a written order is filed. See Reyes-Arreola, 1999-NMCA-086, ¶ 10. An oral ruling granting a severance can be changed at any time, unlike an oral ruling granting a mistrial and discharging the jury when there is a hung jury. Id. The local rules of the Thirteenth Judicial District dictate at LR13-402(A) NMRA 2003:
Unless otherwise ordered by the court all orders, judgments and decrees shall be submitted to the judge by the prevailing party not later than ten (10) days following the date of announcement by the judge of the decision, whether in open court or by dated letter announcing the decision.
{28} Defendant was the "prevailing party" on each of the foregoing matters, and his attorney did not submit written orders as required by the rule. The trial court ruled that since no order of severance was ever prepared or filed as required by the local rule, there was no severance. "It is not the function of a reviewing court to substitute its own interpretation of a local rule for that of the court which promulgated the rule." James v. Brumlop, 94 N.M. 291, 295, 609 P.2d 1247, 1251 (Ct. App. 1980). Unlike the local rules at issue in Cardenas, LR13-402 unambiguously refers to all cases, civil and criminal. In Cardenas, a local rule requiring preparation of a judgment on the mandate that was listed under a heading entitled "Civil Matters  Pleading and Procedure" was held inapplicable in a criminal case, because it did not give adequate notice of its requirements. Id. ¶¶ 8, 10. Here, LR13-402 is written under the heading "Pleading and Practice" and the rules under the heading clearly relate to both civil and criminal cases. Moreover, Defendant's attorney did not claim he had no knowledge of the local rule, unlike the attorney in Cardenas. Id. ¶ 8.
{29} Defendant argues that Rule 5-121(A), (C), and (E) place the obligation on the trial court to see to it that a written order is filed. In my view, these rules are tools for the courts to use in managing their cases and not to be manipulated by counsel. See Ratchford, 115 N.M. at 571, 855 P.2d at 560 (stating that the automatic denial provision of Rule 5-614(C) NMRA 2003 has as one of its purposes to provide courts with the management of their cases). In fact, the Supreme Court appears to have anticipated the very situation presented in this case when it said that, "there may well be other measures to enforce compliance with a trial court's duty to memorialize its oral ruling in a written order within a reasonable time. If the fault lies with counsel who does not comply with a court's direction to prepare and submit a proposed written order, the trial court has ample authority to ensure compliance with its directives." Id. at 572, 855 P.2d at 561.
{30} Here, the trial court's ruling was that no severance was granted since counsel did not prepare the order as required. This was justified. Defendant obtained a severance but he prepared no order granting the severance. He also obtained a mistrial, but filed no order granting the mistrial to commence a new six-month period under Rule 5-604(B)(3). With no severance, and no order on file declaring a mistrial, the operative date to commence trial was six months after mandate was filed in co-defendant's appeal. Rule 5-604(B)(4). The deadline to commence trial was therefore November 1, 2001. Trial timely commenced on September 24, 2001.
{31} In response to the Majority Opinion noting that this issue was not raised, the trial court did say, in denying Defendant's motion, "I think [D]efendant should have filed a[n] order for severance." I therefore respectfully submit that the issue of whether counsel had an obligation to prepare the order is an issue in the case. Furthermore, I respectfully suggest that it is the practice throughout the State for the prevailing party to prepare a form of order reflecting the judge's decision. See LR1-304(A) NMRA 2003 (stating unless otherwise ordered by the court, all orders, judgments and decrees to be submitted to the judge by prevailing party within ten days after announcement of decision by judge if announced in open court, or twelve days following date of the letter announcing the decision); LR2-130(D) NMRA 2003 (stating unless otherwise ordered by the court, prevailing party responsible for presentment of proposed order to court within fourteen days after court's decision); LR3-212(F) NMRA 2003 (stating prevailing party shall submit all orders, judgments and decrees to assigned judge within ten days of the decision); LR4-308 NMRA 2003 (stating unless ordered by the court, all orders, judgments and decrees shall be submitted by the prevailing party to the court no later than ten days immediately following date of announcement of decision); LR5-202(C) NMRA 2003 (stating prevailing party shall submit order, decree or judgment to court and not later than fifteen days following announcement of court's decision, unless otherwise ordered); LR6-208(F) NMRA 2003 (stating prevailing party or person designated by the court shall submit proposed form of order or judgment within ten days of the decision); LR7-003 NMRA 2003; LR7-004 NMRA 2003 (stating all orders, judgments and decrees to be signed by the court shall be delivered to the judge, signed by all counsel of record); LR8-303(A) NMRA 2003 (stating unless otherwise ordered by court, prevailing party shall submit order, judgment or decree to the court within ten days following date of announcement by judge of decision if announced in open court, or twelve days following date of letter or other document announcing the decision); LR9-300(A) NMRA 2003 (stating orders, judgments and decrees will be submitted to the court for signature not later than four days following the day of announcement by the court of its decision, unless longer time granted by the court); LR10-032 NMRA 2003 (stating in all criminal matters, attorney representing successful party shall submit to the court an order or judgment and sentence consistent with the ruling or a finding of the court or with any jury verdict within ten days); LR11-103(B) NMRA 2003 (stating orders, judgments and decrees will be submitted to the court not later than fourteen days following the date of announcement by the court of its decision); LR13-402(A) NMRA 2003 (stating unless otherwise ordered, all orders, judgments and decrees shall be submitted by prevailing party not later than ten days following date of announcement by judge of decision).
{32} I therefore specially concur in the result reached by the majority, but not its reasoning.